[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves a petition filed by the Department of Children and Families (hereinafter, the "Department") which seeks to terminate the parental rights of Bernadette M. to her daughter Rachel M.., whose date of birth is January 1, 1991. The petition lists the father of this child as unknown and the mother has never informed the Department of who the child's father is. The petition was filed on May 12, 1998 and was amended on April 5, 1999.
Rachel first came into the care of the Department in November, 1994 when mother voluntarily placed her due to her being incarcerated for approximately six (6) weeks. On December 23, 1994, mother revoked her voluntary placement and Rachel was returned to her care. On October 21, 1994, a petition which alleged that Rachel M. was neglected and uncared for was filed by the Department. During the pendency of the petition, on February 17, 1995, the Department invoked a 96-hour hold when mother was arrested on charges of failure to appear, and Rachel was again placed into foster care. On April 3, 1995, Rachel was committed to the care and custody of the Department as a neglected child. Her commitment was extended on October 3, 1996, October 3, 1997 and October 3, 1998.
The petition for termination of parental rights was duly served on the mother and she was represented by counsel throughout the proceedings. A contested trial was held on April 5, 1999 and April 19, 1999. The Court took judicial notice of the following: child's date of birth is January 1, 1991; child was committed on April 3, 1995; commitment was extended on October 3, 1996, September 25, 1997 (effective October 3, 1997); and August 24, 1998 (effective October 3, 1998); and Expectations were set on April 3, 1995 and January 1, 1997.
The Department seeks termination on the ground that the child was adjudicated in a prior proceeding to have been neglected, and the mother has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child. The Department further alleges that this ground has existed for not less that one (1) year prior to May 12, 1998, when the action was commenced.
The Department called as witnesses, Jennie Reyes, DCF social worker; Paula Prestianni, DCF social worker; Gloria Tardiff, DCF CT Page 11024 social worker; Robert Neems, Ph.D.; Nancy Randall, Ph.D.; Joy Clark, MSW and William Hobson, MS. The Department's exhibits included the Expectations dated 4-3-95; Expectations dated 1-9-97; Social Study dated 5-20-98; Dr. Neem's Report on Clinical Supervised Visits dated 7-30-98; Dr. Neem's Report on Clinical Supervised Visits dated 1-29-99; Psychological Evaluation by Dr. Randall dated 3-1-95; Psychological Evaluation by Dr. Randall dated 12-13-96; Psychological Evaluation by Dr. Randall dated 7-1-98; Addendum to Social Study dated 4-15-99; and Sexual Offender Evaluation by Mr. Hobson dated 10-29-98.
The mother called Mary Granata, MSW as a witness, and mother testified herself Mother's exhibits were a letter from Rachel to John H. (stepfather) and a birthday card from Rachel to mother.
The Court, having reviewed the verified petition, Summary of Facts, Social Study and exhibits presented at trial; and having heard the testimony of the witness, makes the following findings of fact:
FINDINGS OF FACT
On April 3, 1995, Expectations were ordered for mother which included; 1) keep all appointments with DCF and keep her whereabouts known to DCF and her attorney; 2) visit the child as often as DCF permits; 3) participate in counseling to include; parenting, family and drug/alcohol. This counseling should include cohabitant; 4) follow recommendations of counselors; 5) secure and maintain adequate housing and income; 6) no substance abuse; 7) no involvement with the criminal justice system; and 8) cooperate with her probation officer. The evidence presented indicates that mother was partially compliant with these expectations although her progress with following the recommendations of her counselors was slow. She kept her appointments with DCF, although her explosive temper made it difficult to work with her; visited Rachel as often as permitted; attended individual counseling on an inconsistent basis; attended parenting classes; went to the substance abuse evaluation at Hockanum Valley Community Council and attended a partial-hospitalization program at RiverEast from February 6, 1996 to April 2, 1996. The purpose of her attendance at this program was primarily to help mother control her verbally explosive behavior and her critical and harsh attitudes toward others. Mother's prognosis as stated in her discharge summary was "Guarded, given and patient's limited coping resources." Mother CT Page 11025 was inconsistent in compliance with individual therapy at Hockanum Valley Community Council, attending from December, 1995 to November, 1996. On December 18, 1996, DCF was informed that mother's therapy was being terminated because she had been consistently missing appointments.
Expectations were again set on January 1, 1997, upon extension of Rachel's commitment. These expectations included the additional requirements that mother cooperate with a parent aide/parenting classes; deal specifically with anger management in individual counseling; participate in a neuropsychological evaluation if requested; cooperate with a sex offender evaluation if recommended by Dr. Anderson and follow recommendations of such evaluation. Mother became increasingly less cooperative with expectations. Mother remained consistent in her visitation with Rachel, always requesting more visitation. Her relationship with DCF, however, deteriorated. Mother and her boyfriend were evicted from their apartment in May, 1997 due to non-payment of rent, and from mid-May, 1997 to September, 1997, resided in two(2) motels. When they secured housing, mother would not tell her social worker her address for a couple of weeks. She wouldn't let the social worker into the apartment on occasion; and threatened to have the social worker arrested. Mother did not begin individual counseling again until January, 1997, then stopped again in May, 1997. Mother did not attend any further individual counseling as of the date of the amended petition. Regarding parenting classes, mother had not participated in any since the 4-session class in December, 1995. In January, 1997 the DCF social worker attempted to obtain a parent aide for mother through the Exchange Club, which refused to provide one stating that they had worked with mother for years prior to the removal of her children and that mother had not made progress. The worker attempted without success to find another agency to provide parent services to mother. However, mother consistently maintained to DCF that she did not feel that it was necessary for her to attend parenting classes or individual counseling. Substance abuse was not an issue. The neuropsychological evaluation and sex offender evaluation were not requested or able to be arranged.
Mother did cooperate with three (3) court-ordered psychological evaluations which were done by Dr. Nancy Randall, which covered a period of four (4) years. In her last evaluation, dated August 17, 1998, Dr. Randall noted that "although mother has made positive changes since the previous evaluation, she continues to have difficulties that could be expected to impair CT Page 11026 her parenting." She found that mother "continues to have problems with impulse control, frustration tolerance, and anger. Given the level of frustrations inherent in caring for several children at a time, it could be expected that this would be a difficult task for her." of added concern was the fact that mother had two (2) other children, an infant and a toddler to take care of. Dr. Neems, who supervised seventeen (17) visits between mother and her children as of his last report dated January 29, 1998, noted the toddler, Brandon, to be an extremely active, physical and impulsive little boy. Taking care of him is a very intensive job and he required nearly constant attention even when he was contained in a single room. Rachel was seen to be a confused, need child with aggressive and oppositional tendencies. Neither psychologist was of the opinion that mother was equipped to adequately address Rachel's needs in light of mother's limitations and the overwhelming demands of childcare that she had. Both psychologists recommended that Rachel not be returned to her mother's care.
Dr. Nancy Randall evaluated mother on three (3) occasions. In 1995 and 1996 she found mother to be an angry, immature young woman who blames others for her difficulties and accepts little responsibility when things go wrong in her life. She felt that mother would be difficult to work with in a therapeutic setting. Her judgment was poor, leading to inappropriate choices. Dr. Randall stated that mother would require numerous treatment services in order to resume full-time care of her children. Mother continued to lack adequate parenting skills and had a low frustration tolerance. Parenting assistance of a parent aide on an intensive level was recommended. Individual therapy was recommended with a focus on decision-making, coping skills and anger management. Mother, however, had little insight into these issues and "indicated that she does not honestly believe that she needs therapy, though she has been willing to go in order to please DCF and the Court. Her commitment to change for herself and her children (other that what is necessary to have them returned to her) does not appear to be strong," (Psychological Evaluation of Dr. Randall, dated 1/7/97)
Mother was seen in her best light at the psychological evaluation done in 1998. Dr. Randall found that although mother continues to have problems with impulse control, frustration tolerance, and anger, she had made progress in these areas and seemed to be in better control at that time. However, mother was still unable to accept responsibility for her own mistakes or CT Page 11027 misjudgments. Ms. M. was still a woman who is easily overwhelmed and at risk for explosive outbursts when she feels frustrated or angry, and individual therapy was still being recommended. Dr. Randall concluded that it would be unrealistic to believe that mother would have the patience, impulse control and overall ability to adequately parent Rachel in addition to the two (2) young children she had. Dr. Randall recommended that Rachel remain in the care of DCF and that a permanent home be established for her as quickly as possible.
ADJUDICATION
With respect to the sole statutory ground alleged for termination of parental rights, the Court finds that the petitioner has established by clear and convincing evidence, that mother has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, she could assume a responsible position in the life of her child. C.G.S. Sec. 17a-112(c)(3)(B). The mother was offered numerous services over an extended period of time and has simply not been able to benefit from these services or bring herself into a position in which she could provide adequate care for this child, as of the date of the amended petition. She has been inconsistent in her cooperation with services which have been offered to her. She continued to have little insight into her issues and the need to participate in these services. The Court further finds that this ground has existed for a period of time exceeding one (1) year prior to the filing of the petition of the petition for termination of parental rights.
REQUIRED FINDINGS
The Court makes the following factual findings based upon the clear and convincing evidence required by C.G.S. Sec. 17a-122(e):
(1) Appropriate and timely services were provided to mother by the Department, including parenting classes, parent aide services, individual counseling with several agencies, substance abuse evaluation and clinically supervised visitation.
(2) The Court finds by clear and convincing evidence that the Department made reasonable efforts to reunify this child with her mother. At one point visitation had progressed to being unsupervised in mother's home. Mother's failure to consistently CT Page 11028 involve herself in needed therapy and her insistence that she did not have problems and did not need therapy impeded her progress and resulted in repeated problems which impaired her ability to assume care of her child.
(3) Reasonable and realistic goals were set by Department in Expectations dated and signed by mother on April 3, 1995 and January 9, 1997. Mother was unable to successfully comply with or benefit from services offered.
(4) Regarding the child's emotional ties to her mother, this is a problematic situation for Rachel. Rachel's therapist, Joy Clark, testified that Rachel doesn't talk much about her mother. She talks more about the family she is with than mom and has stated to Ms. Clark on numerous occasions that she wants to stay where she is. Dr. Neems stated that Rachel tends to avoid the topic of whether she should or wants to return home to her mother and shuts down when the subject is raised. She is excited about going to live with a family where she would stay until she is grown, however, she doesn't want to hurt her mother's feelings and is afraid that her mother will get angry. Dr. Randall stated that Rachel still shows a strong loyalty to her mother, but away from mother's presence, she is more willing to admit to some ambivalence about reunifying. "Rachel recognizes Ms. M. as her mother and there is clearly an attachment between them. However, Rachel does not look to her mother for protection or security. She is more willing to look to her foster mother for these. . . . Therefore, it appears that her foster parents currently fill the role of her psychological parents." (Psychological Evaluation of Dr. Randall, dated August 17, 1998)
(5) Rachel is now eight (8) years old.
(6) Regarding mother's efforts to adjust her circumstances, conduct or conditions to make it in the best interest of the child to return to her home in the foreseeable future and (A) the extent to which the mother has maintained contact with the child as part of an effort to reunite the child with the mother and (B) the maintenance of regular contact or communications with guardian or other custodian of the child; mother has always visited her daughter as much as she was permitted by DCF, and has requested more visitation and her daughter's return to her. However, mother has not consistently followed through with services offered to her to enable her to care for this child. Every evaluator and service provider who has been involved with CT Page 11029 this case over the years has stated that mother must cooperate with and benefit from therapy in the areas of parenting and emotional and psychological issues in order to be able to successfully parent this child. Without that there is a strong likelihood that placement would disrupt if Rachel goes back home, which would be devastating to this child. In addition, Dr. Randal testified that she had concerns as to whether mother would follow through with Rachel's treatment needs given her inconsistency in following through with recommendations for counseling for herself
(7) No inappropriate conduct is noted on the part of anyone which would have prevented the mother from having a meaningful relationship with Rachel. The Department took reasonable steps to encourage the mother to have such a relationship with her daughter. There was no evidence that economic circumstances prevented mother from having a meaningful relationship with her child.
DISPOSITION
After a placement of approximately six (6) weeks in November-December, 1994, Rachel has been continuously out of her mother's care since February 17, 1995, since she was four (4) years old, half of her life. Rachel requires stability now. She needs to be able to work on bonding and know where she is going to be, and that she will be with parents who she can trust to protect her. She needs to have the burden of feeling that she must decide whether she should go live with her mother removed from her. Her mother has been unable to do what is necessary to provide a home for Rachel. Giving any further time for this to occur is against Rachel's best interests.
It is, therefore, in the best interest of Rachel M. that a termination of parental rights enter with respect to the mother Bernadette M., and accordingly, a termination of her parental rights is ordered. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. A permanency plan for this child shall be submitted within ninety (90) days. A review plan shall be filed in accordance with state and federal law.
Patricia Lilly Harleston, Judge CT Page 11030